**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3881
_____

3039 B STREET ASSOCIATES, INC.;
GIANNI BIGNETTI, President 3039 B Street Associates, Inc.,
Appellants

v.

LEXINGTON INSURANCE COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSLYVANIA
(D.C. Civil No. 09-cv-01079)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2011
_____

Before: RENDELL, JORDAN and BARRY, <u>Circuit Judges</u>

(Opinion Filed: September 19, 2011)
_____

OPINION
_____

1

BARRY, <u>Circuit Judge</u>

3039 B Street Associates ("B Street") and Gianni Pignetti ("Pignetti")[1] appeal

from the District Court's grant of summary judgment against them in this action seeking

damages for the alleged bad faith of Lexington Insurance Company ("Lexington") in

investigating their insurance claim. There being no evidence that would permit a jury to

find by clear and convincing evidence that Lexington acted in bad faith, we will affirm.

## I. Background

### A. Facts

As we write exclusively for the parties, we recite only the essential facts, which are

set forth more fully in the District Court's opinion. On January 6, 2008, B Street

discovered that a sprinkler pipe had ruptured in its property located at 3039-51 B Street in

Philadelphia, Pennsylvania, damaging both the property itself and some electrical

equipment stored there. B Street subsequently submitted a claim for insurance benefits to

Lexington, its insurer.

Lexington hired an independent adjustment firm, Crawford & Company

("Crawford"), to investigate and adjust the claim. Among other things, Crawford sought

to determine if B Street had maintained heat at the property, as the failure to do so would

vitiate its rights under the policy. Crawford was particularly concerned about this issue

because many windows were broken, rendering it difficult to heat the property, and much

---

[1] In the materials before the Court, Pignetti's name is spelled both "Pignetti" and
"Bignetti." Following the spelling used in Appellants' brief, we refer to "Pignetti."

of the claimed water damage appeared to have been caused by water that had entered through these broken windows and pre-existing leaks in the roof. (See App. at 273a, ¶ 12).

Crawford faced considerable difficulty in determining whether the property actually was heated. When Crawford sought documentation that heating oil had been delivered to the property, for example, the last delivery that B Street could prove had taken place was on March 8, 2007, some ten months before the incident. While Pignetti claimed that another company had delivered 2500 gallons of heating oil in the fall of 2007, he could not name the company. Crawford contacted the two companies that Pignetti said might have delivered the oil, but each denied that it had done so.

Rather than produce satisfactory documentation, B Street suggested that Crawford contact its maintenance employee, Edgar Branch, who would state that the premises were heated at the time of the incident. Although B Street first suggested that Crawford contact Branch on March 5, 2008, Branch was not contacted until his deposition on June 5, 2009, at which time he testified that the property was always heated.

On July 7, 2009, Lexington decided that despite its concerns, it would not dispute coverage, and it mailed a check in the amount of $78,511.84.

## B. Procedural History

B Street commenced suit in the Philadelphia County Court of Common Pleas on February 17, 2009, prior to Lexington's ultimate disposition of its claim. Lexington

3

removed the suit to the District Court on March 10, 2009. The Court granted Lexington's motion for summary judgment on May 4, 2010, and substantially denied B Street's motion for reconsideration on August 27, 2010.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo, applying "the same standard as the District Court in determining whether summary judgment was appropriate." *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. Discussion

Although it is difficult to tell from B Street's briefing, its sole argument on appeal appears to be that Lexington acted in bad faith in violation of 42 Pa. Cons. Stat. § 8371 by waiting over a year to contact Branch, i.e. that it should have paid the claim earlier. (*See* B Street Br. 18 ("[T]he poor response time that is relevant to . . . the bad faith issue was the time it took LEXINGTON to contact Edgar Branch.").[2]

"Ultimately, in order to recover on a bad faith claim, the insured must prove: (1)

---

[2] B Street also brought a claim under the Pennsylvania Unfair Insurance Practices Act, 40 Pa. Stat. Ann. § 1171.1, but it does not challenge the District Court's conclusion that that statute does not create a private right of action for bad faith for an insured against an insurer.

4

that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). "The insured is required to meet its burden of proving 'bad faith' by clear and convincing evidence," and "mere negligence or bad judgment is not bad faith." *Id.* (internal quotation marks omitted). Even where a claim is eventually paid, "[d]elay is a relevant factor in determining whether bad faith has occurred." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 234 (3d Cir. 1997)). Nevertheless, "Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138.

The undisputed summary judgment record shows that B Street's claim was highly questionable, and that Lexington, through Crawford, conducted a reasonable investigation. Although Lexington ultimately decided not to contest coverage, (1) B Street could not provide documentation showing a recent oil delivery to the premises, (2) the property had numerous broken windows, such that it would have been difficult to heat it, and (3) while B Street claimed to have received a delivery of oil from another company, Pignetti could not recall the name of the company, and Crawford's attempts to confirm the delivery were unsuccessful. It also bears noting that B Street was unable to demonstrate its ownership of the electrical supplies that it claimed were damaged by the

5

pipe rupture, further heightening Lexington's suspicion.

In light of these substantial problems with B Street's claim, its position — that Lexington should have simply taken Branch at his word and immediately paid the claim — cannot prevail as a matter of law. B Street's claim was highly questionable, and "Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138. For this reason, the District Court correctly concluded that B Street would be unable to show by clear and convincing evidence that Lexington acted in bad faith. It therefore properly granted summary judgment.

## IV. Conclusion

We will affirm the judgment of the District Court.